81 F.3d 900
 96 Cal. Daily Op. Serv. 2706, 96 Daily Journal
D.A.R. 4497
UNITED STATES of America, Plaintiff-Appellee,
v.
Guillermo TORRES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose ZUNIGA, a/k/a Jose Flores-Zuniga, Defendant-Appellant.
 Nos. 95-50235, 95-50241.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 11, 1996.
Decided April 18, 1996.
 
 Jack P. Dicanio, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.
 Humberto Diaz, Federal Public Defender, Los Angeles, California, for defendant-appellant.
 Phillip A. Trevino, Los Angeles, California, for defendant-appellant.
 On Appeal from the United States District Court for the Central District of California.
 Before: BRIGHT*, NORRIS, and WIGGINS, Circuit Judges.
 OPINION
 BRIGHT, Circuit Judge.
 
 
 1
 Guillermo Torres and Jose Zuniga appeal their one-year and one-day sentences the district court imposed after they pleaded guilty to conspiring to transfer false identification documents in the mail, in violation of 18 U.S.C. §§ 371 and 1028(a)(2). The defendants raise three sentencing issues, arguing the district court erred in denying them several offense-level reductions and in imposing a six-level enhancement under U.S.S.G. § 2L2.1(b)(2)(C) based on the number of "sets of documents" involved in the offense. Although the defendants were not entitled to any role reductions, we remand to the district court for reconsideration of the six-level enhancement.
 
 I. BACKGROUND
 
 2
 Torres and Zuniga worked for Estamos Unidos Immigration Services (EUIS), a business owned by their co-defendants Alberto Marrero and Alberto Salas. EUIS provided various types of legal and illegal immigration-related services at four separate locations in Los Angeles; Torres had worked at one of the offices since January 1991, and Zuniga began at one office in approximately 1992 and later transferred to another. Their duties included both legal and illegal activities, and their compensation was not in any way "keyed" to the number of fraudulent applications they processed or the income derived therefrom.
 
 
 3
 Torres and Zuniga conducted initial processing interviews; sometimes falsified applicants' dates or places of birth, countries of origin, or times or places of entry into the United States; provided false birth certificates; and created false stories regarding the applicants. They mailed these falsified applications to the Immigration and Naturalization Service (INS). In June 1994, investigating agents executed search warrants at all four offices of EUIS and seized over 3,000 files allegedly reflecting political asylum applications. Investigating agents claimed they had examined 1,000 of these files and had determined all of the samples to be fraudulent. The files did not reflect which of the offices they came from or over what period of time they were prepared.
 
 
 4
 Both defendants' presentence reports (PSRs) indicated a base offense level of 9; a six-level increase pursuant to section 2L2.1(b)(2)(C) because their offenses involved more than 100 "sets of documents/passports"; a two-level reduction for accepting responsibility; a total offense level of 13; a criminal history category of I; and a Guidelines sentencing range of twelve to eighteen months imprisonment. Both defendants filed objections to the PSRs, challenging the six-level increase and arguing, inter alia, for a three-level reduction under U.S.S.G. § 2L2.1(b)(1) because they committed the instant offense "other than for profit," and for a two-level minor participant reduction under U.S.S.G. 3B1.2(b).
 
 
 5
 The district court adopted the recommendations contained in the PSRs and rejected defendants' arguments. The court determined that their illegal activities were "for profit" because they were compensated for them as part of their jobs and that those activities merited a six-level increase because they involved perhaps thousands of documents.[1] The court sentenced each defendant to twelve months and one day imprisonment and three years supervised release. Torres and Zuniga appeal.
 
 II. DISCUSSION
 
 6
 This court reviews de novo the district court's interpretation and application of the Sentencing Guidelines, and reviews the district court's factual findings for clear error. United States v. France, 57 F.3d 865, 866 (9th Cir.1995).
 
 A. "Other Than For Profit" Reduction
 
 7
 Torres and Zuniga first argue they merited a three-level reduction in their offense levels because they did not commit the instant offense for profit. Section 2L2.1(b)(1) provides for a three-level decrease "[i]f the defendant committed the offense other than for profit". " 'For profit' means for financial gain or commercial advantage." Section 2L2. 1, comment. (n.1); see also United States v. Buenrostro-Torres, 24 F.3d 1173, 1175 (9th Cir.1994) (district court did not clearly err in determining defendant committed offense for profit when defendant sold false immigration documents and sheer quantity of materials seized from him showed he intended them to be for profit).
 
 
 8
 Torres and Zuniga argue that their salaries were not "keyed" in any way to the number of fraudulent applications they processed and that the company EUIS received the "payment" for illegal conduct. The Government responds that defendants had a purely financial motive in the crime, even if they did it to keep their jobs. We agree. This is not a case where defendants prepared the false applications in an effort to obtain legal residency for themselves, their families, or legitimate victims of foreign prosecution. That the defendants served simply as hourly employees with salaries not directly "keyed" to the measure of their illegal activities relates to their roles in the offense, rather than to whether they committed the offense other than for profit. They received financial compensation for their illegal activities, which were part of a commercial profit-making venture.
 
 B. Minor Participant Reduction
 
 9
 Torres and Zuniga next argue that each should have received a two-level reduction under U.S.S.G. § 3B1.2 for being a minor participant. Such reduction applies when the defendant is substantially less culpable than the average participant. United States v. Benitez, 34 F.3d 1489, 1497 (9th Cir.1994) (citing U.S.S.G. § 3B1.2, comment. (n.3)), cert. denied, --- U.S. ----, 115 S.Ct. 1268, 131 L.Ed.2d 146 (1995). Here, the district court found that defendants' "important roles" included giving out advice and coaching applicants over a long period of time, quoting prices, accepting payment, issuing receipts, and placing fraudulent documents in application packages conveyed to the applicants. Although Torres and Zuniga were less culpable than Marrero and Salas, we cannot say that the district court clearly erred in determining they did not qualify as minor participants.
 
 
 10
 C. Six-Level increase For More Than 100 Documents
 
 
 11
 Section 2L2.1 applies against traffickers in documents relating to naturalization, citizenship, or legal resident status. At the time Torres and Zuniga were sentenced, section 2L2.1(b)(2)(C) provided for a six-level increase if the offense involved 100 or more "sets of documents or passports." According to the commentary at that time, "[w]here it is established that multiple documents are part of a set intended for use by a single person, treat the documents as one set." Section 2L2.1, comment. (n.2). The Sentencing Commission amended the section in November 1995 to change the phrase "sets of documents" to "documents" in section 2L2.1(b)(2), and to change commentary note 2 to read, "[w]here it is established that multiple documents are part of a set of documents intended for use by a single person, treat the set as one document." U.S.S.G.App. C, Amend. 524 (Nov. 1995). Both commentary versions are consistent with a former amendment to this section enacted so that "[c]onsistent with the Commission's general approach throughout the guidelines, the offense level increases gradually with the number of aliens." U.S.S.G.App. C, Amend. 450 (Nov. 1994).
 
 
 12
 Torres and Zuniga renew their challenge to the six-level enhancement, arguing that the PSR, the Government, and the district court failed to address the issue of what constitutes a "set" and how many "sets of documents" were involved. See United States v. Martinez-Cano, 6 F.3d 1400, 1402-03 (9th Cir.1993) (rejecting contention that "sets of documents" mean "single documents" and concluding that set is group of documents of same kind that belong together or are ordinarily used together). Torres and Zuniga also refer to the separate and later sentencing of their co-defendant Marrero, the leader of the conspiracy, who successfully challenged the six-level enhancement. At Marrero's sentencing, the court determined that the government failed to prove the requisite 100 or more sets of documents to trigger the six-level enhancement. Marrero received a base offense level of 9, a four-level increase for his leadership role, a total offense level of 13, and a sentence of eighteen months imprisonment. Torres and Zuniga argue that their cases should be remanded to the district court for findings as to the number of fraudulent sets of documents involved.
 
 
 13
 The Government responds that defendants raise their specific "sets of documents" argument for the first time on appeal and therefore they have waived it. The Government argues that Zuniga's and Torres' co-defendant Salas had conceded preparation of over 100 false political asylum applications; the defendants did not put on evidence to contest this concession and thus they should be bound by it.
 
 
 14
 Although the Government claims the defendants did not specifically argue below that "documents" do not equal "sets of documents," the Government concedes in its brief that both defendants argued below that less than 100 sets of documents were involved. Both defendants contested the six-level enhancement recommended in their PSRs. This record preserved the issue and required the district court to make factual findings relating specifically to the number of sets of documents.
 
 
 15
 The Government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence. United States v. Young, 33 F.3d 31, 32 (9th Cir.1994). This court has emphasized that the preponderance standard is a meaningful one which requires the judge to be convinced by a preponderance of the evidence that the fact in question exists, rather than abstractly weighing the evidence in order to determine which side has produced the greater quantum. United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc), cert. denied, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).
 
 
 16
 Here, despite defendants' objections to the PSRs, the district court did not require and the Government did not produce a single set out of the thousands of documents which were seized. Although the Sentencing Guidelines have shifted linguistically in emphasis from "sets of documents" back to "documents," they still provide that multiple documents, part of a set intended for use by a single person, should be treated as one document. U.S.S.G.App. C, Amend. 524 (Nov. 1995).
 
 
 17
 As to the denial by the sentencing judge of the six-level increase for Marrero, the Government argues a mere sentencing disparity among co-defendants does not by itself negate an otherwise valid sentence. While it is true that disparity may exist in sentencing co-conspirators, that disparity cannot be justified where the factual findings are inconsistent on the same record. That is the situation here between these defendants and the ringleader Marrero.
 
 III. CONCLUSION
 
 18
 We conclude that Torres' and Zuniga's contentions that they were entitled to sentencing reductions based on the nature of their minor or "non-profit-making" roles are meritless. We conclude that the Government did not meet its burden below of producing a preponderance of evidence to support a six-level enhancement for sets of documents. Accordingly, we VACATE Torres' and Zuniga's sentences and REMAND to the district court for resentencing consistent with this opinion.[2]
 
 
 19
 VACATED and REMANDED.
 
 
 
 *
 The Honorable Myron H. Bright, Senior United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 At his subsequent sentencing, co-defendant Alberto Marrero, the leader of this illegal operation, successfully challenged the six-level increase, and the government did not appeal
 
 
 [2]
 On remand, the trial court may consider the affidavit presented to this court by the appellants as a supplement to the record. The prosecutor did not oppose the motion to supplement the record with this affidavit